The final matter, number 24-1649, Becky's Broncos, LLC, et al. versus the Town of Nantucket, et al. At this time, would counsel for the appellant please introduce himself back on the record to begin? Good morning, Your Honors. Attorney Lucas Newbill on behalf of the plaintiff's appellants. And may I reserve three minutes of time for rebuttal? You may. Thank you. This too is a complicated case. If Professor Philip Arita, well, to paraphrase Professor Arita from his treatise on antitrust, the most quoted treatise on the subject among courts, courts routinely err by applying the state action too broadly in order to avoid confronting the substance, the actual, whether or not there is an antitrust violation. And the Supreme Court validated Professor Arita's statement in Phoebe Putnam. That's what Phoebe Putnam was, right? And Phoebe Putnam says you can have a state that delegates responsibility to even another state agency or municipality. And that can be really intricate, like in Phoebe Putnam where they delegated to the hospital authority the ability to purchase hospitals, to set prices, to do all of these things that are definitely can be done anti-competitively, right? And the Supreme Court said no, no. The Supreme Court chided, I believe it was the 11th Circuit, for applying the doctrine too broadly. A broad grant or an intricate grant of authority to do something is not state authorization to do that thing anti-competitively. What is the antitrust violation here? I mean, the law forbids certain agreements. Yes, Your Honor. And it forbids attempts to monopolize. Your Honor, yes. What are you claiming here? The insulation, complete insulation of the market of five local companies and Hertz for at least the past 10 years, allowing no new entrance to the market. So is this a Section 1 or a Section 2 claim? This is both. It's both, Your Honor. Yes, it is an attempt to monopolize. It falls under Boulder, really, is what it does, under the Supreme Court ruling, that municipality cannot enact laws that are not state authorized. That limit competition without state authorization. I mean, that's Boulder, that's Rectrix, that's all of these antitrust cases. Without the state's authority to enforce or to write anti-competitive laws, the municipality can't do it. Why didn't the state give that authority here when it tacitly approved the amendments to the bylaws? So the state did not, the legislature did not approve the amendments to the bylaw. The Attorney General took no action, and the case law is clear that the executive branch cannot grant state action immunity. This has to be a legislative determination, because the politicians have to take responsibility for the anti-competitive impact that their laws are going to have on the communities. There has to be political accountability. The executive branch has no authority to give state action immunity. But your view is that the original legislative authorization is not enough, based on the original bylaws? Absolutely not, Your Honor. In fact, the original bylaws were perfectly docile. They were not anti-competitive in the least. They said, we don't want anybody to operate on the island without a license, and we want to charge them $100 per car. So the municipality can keep track of who's renting out cars, and they can charge a small fee. They put it before the legislature. The legislature said, okay, you can do that, but you can't charge that fee on top of people who already paid an excise tax. And that's actually pro-competition, because you're encouraging locals to participate, right? It's in the record, in the letter, from the attorneys, from a couple of the original operators, that they pay $50,000 on 93 cars in excise tax. So the excise tax is about five times as much as the $100 per car fee under the law. That doesn't make anti-competitive. That doesn't make it foreseeable to the legislature that 10 years later, Nantucket is going to decide, hey, let's close this market, and we'll cap it at 700 cars. We'll limit the supply, which if you limit supply, you raise the price, you decrease the quality of the service. It's basic economics. It's antitrust law 101. That's what they're engaging in. And I haven't, not that it's necessary at this stage, but I have in the record an economist who opines to the impacts that this law is having. Look, Nantucket knows that this law fails on the merits of antitrust. That's why they're hanging their hat on. Your argument is essentially that they had to give a license to anyone who had a $100 check. No. My argument is that the legislature never authorized them to cap the number of cars on the island, and so they're not immune from the antitrust laws. How do you have the right to challenge that when, as I understand it, there are several, eight to be exact, unissued licenses? I'm sorry. Can I hear that again? There are, as I read the record, eight unissued licenses. So it's not a question there is no license available. Oh, right. Right, Your Honor. Well, that goes to how the law is enforced, and completely arbitrarily and completely ineffectively, right? Yeah, but that's different than an antitrust violation. I don't see how you make an antitrust violation out of it. Well, I don't think that withholding the eight medallions cuts against the fact that the town, for the last nine years, has not provided any process for a new applicant for a license. I think that's not only anti-competitive, because you're insulating the market, you're keeping out competition. It's a complete barrier to the market. But you're also, and I did a letter, I'm sorry, on Sunday, when I read the case too late, later than I should have, but Walgreen v. Rowland is really on point when it comes to the Dormant Commerce Clause in this. You have a majority, five out of the six players are local, and you have a law that, in Walgreen v. Rowland, the motives were not illegitimate. They wanted to comply with the Certificate of Need law that federal government had passed, and so they put up a Certificate of Need law down in Puerto Rico, so that any health care facility had to get a Certificate of Need. They applied it to pharmacies, and what the result was, unsurprisingly, was that when they passed the law, it was 93 percent locals, and 20 years later, it was still 93 percent locals. But, counsel, how is there a discriminatory effect against out-of-state interests? You say it's five out of six companies, but I may have the facts wrong, but I thought that Hertz has almost half of the medallions. So even though it's only one out of six, it's got roughly half of the market or a little bit less. Isn't that right? Well, they do have a lot of the medallions. 310 out of 690, something like that, right? I mean, that's almost 50 percent. I'm not sure on the exact number on that, but that's certainly in the record. They certainly have a lot of them, and they certainly don't use a lot of them to drive up the prices and that's what the economist opined to what's happening and what the law allows, right? But that's not a discrimination against out-of-state interests that they're not using, that the out-of-state entity isn't using the medallions. But, Your Honor, I think you're focusing on revenues rather than the number of players. Like in Walgreen v. Roland, they weren't focused on, you know, is this 7 percent of foreigners operating here making 50 percent of the revenue? No. Like, of the 1,000 pharmacies, 950 are locals, right? Of the players here, five out of six are local. They're doing the maximum they want. Well, if your position were vindicated, then the percentage would actually increase of locals. Well, Your Honor, the law is a violation of the antitrust, and it should go to the wayside. I'm talking about your dormant commerce clause. Yes, I was asking about the dormant commerce clause claim. Oh, sorry. If my position is vindicated, it would be? The percentage of locals will increase. Well, with regards, I think, to this certain preliminary injunction. But we have to keep in mind the stage at which we're at, which in the preliminary injunction stage, there's a potential for a bond that my clients have to issue. And they're a small business. They have two vehicles. They can't issue a bond for, you know, the 200 people on Turo or all of the other companies. So they're here just asking for the pendency of this litigation to be allowed to operate so that they don't sell their vehicles and have to take work off island. And the Sherman Act has... What does that have to do with the dormant commerce clause? Oh, you're saying that it would create two more locals, right? But that's not what the relief is in the end, right? The relief is that these laws are illegal. They violate antitrust. They violate the dormant commerce clause. And they should be stricken. You told us they violate the dormant commerce clause because five out of six of the owners are local. Yes, Your Honor. You're representing local owners who wish to get an injunction giving them a license?  Yes, Your Honor. Well, I don't think that just because they're local... That doesn't impact whether or not the... The relief requested doesn't impact the validity of the legal claim. And the facts are that this case is... That this law is illegal. And residents have a right to challenge their laws under antitrust or dormant commerce clause, just like non-residents. And the record is replete with that. Family winemakers, wine and spirits. It's locals that know about these laws that generally challenge them. I think it was a Hawaii distiller or a wholesaler who challenged the local laws that was exempting from taxes a local liquor because it was harming their business because they had to pay taxes on out-of-state liquor coming in. But just because the harm... They have standing because they're harmed by the law in its discriminatory impact. Thank you, Counsel. Thank you, Counsel. At this time, would Counsel for the Appellees please introduce themselves on the record to begin? Good afternoon, Your Honors. I'm Matthew Hamill on behalf of the Appellees out of Nantucket and its Select Board. Your Honors, I'm going to jump right into Plaintiff's claim under the dormant commerce clause and in particular the 28-J letter which was submitted this past weekend. There is no dormant commerce clause violation here, Your Honor. As a threshold matter, we do raise in our brief the issue of standing. We do believe that plaintiffs lack standing to bring the claim under the dormant commerce clause. There's no dispute that they are an in-state business. I take no issue with the point of loss at forth in the Holton case, which Judge Celia authored that an in-state business can assert a claim under the dormant commerce clause where the rudiments of standing are met. Here I would argue that the rudiments of standing have not been met, Your Honors. Any injury in fact that can be alleged is not traceable to any discrimination on in-state as opposed to out-of-state businesses. Does the injury have to be traceable to the discrimination or just it has to be traceable to the law that they're challenging to the bylaws? I believe it does have to be traceable to the bylaw itself, Your Honor, even assuming plaintiffs could cross the threshold. But they're saying they're harmed by the bylaw, they can't get a license. What you seem to be arguing is that it has to be traceable to their claim, their specific claim, their dormant commerce clause claim. Well, Your Honor, I would submit that in a dormant commerce clause action where a statute treats in-state versus out-of-state entities equally and there's an equal playing field, it's of no constitutional concern from a dormant commerce clause perspective. That's a merits argument rather than a standing argument, isn't it, counsel? I can see that it goes to the merits as well, Your Honor. I would submit that even if plaintiffs could establish Article III standing, the harms alleged by plaintiffs are purely local. They're narrow and they're specific only to the plaintiffs. And I would submit that that's outside of the zone of interest under the dormant commerce clause analysis. Turning to the 28J letter in the Walgreens case, Your Honor, that case is readily distinguishable. In that case, as my friend indicated, the Commonwealth of Puerto Rico enacted a statute in which required pharmacies seeking to open to submit an application and obtain a registration or essentially a certification if they could do so. In contrast to that statute, Chapter 58 does not have the extensive administrative procedure that was contained in that statute, and I'll just briefly touch on that for the Court. In the Walgreens case, upon the filing of an application for a certificate, the Secretary of Health would issue a notice to essentially abutting pharmacies within one mile radius of where the proposed pharmacy was set to open, and those abutting pharmacies had the opportunity to file an objection or an opposition to that application. In that case, as my brother pointed out, 92 percent of the pharmacies were locally owned and operated pharmacies. If they opposed, it triggered an evidentiary hearing at which a hearing officer would hear evidence concerning the potential anti-competitive effects of the inclusion of that additional proposed pharmacy in that location where it was. And so the difference in the Walgreens case as opposed to here is that statutory scheme set forth a comprehensive administrative procedure, which actually vested power in the locally owned businesses that would have been competing with the proposed pharmacy. And there was evidence in that case that was decided at summary judgment and not on a preliminary injunction, I might add. There was evidence in that case where there was 25 percent of the new entrants to the market were denied when those local operators objected and filed that opposition. But, counsel, why isn't the situation here worse because the plaintiffs just can't get a license at all? I would submit, going back to my merits argument, that the playing field is the same. So if the plaintiffs were in-state or out-of-state, it would not make a difference. I would also note, Your Honor, that with respect to the record before the District Court, there's no evidence in the record that any out-of-state business has sought entry into this market. There's no evidence in the record that any out-of-state entity has sought and been denied entrance into this market. And I think that goes to the preliminary injunction standard where it is plaintiff's burden to establish a likelihood of success on the merits. I would submit that they did not meet that burden here. Can I ask you to address the state action immunity issue? I assume you need to establish the defense. That's your responsibility. Yes, Your Honor. And I'm just wondering, how is the original bylaw sufficient for you to get the defense? I mean, it really doesn't seem to say very much other than the Island Canal Licensed Rental Vehicle Agencies, and that's about it. So why is the foreseeable result of that anti-competitive such that you can get the defense? Yes, Your Honor. Well, I believe the case law in the First Circuit is where there is a broad delegation of authority from the legislature to the municipality. Suppression can be inferred. And I would submit that this was a broad delegation, and I believe, with all due respect to my friend, kind of undervalues the breadth of the delegation from the legislature in Chapter 266 of the Act. Well, didn't it say you could do two things, you could license and you could charge a $100 fee for the license? It did say those things. It didn't say anything about a cap? It did not say anything about a cap, Your Honor. In fact, the town felt that when they wanted to put on a cap, they needed another ordinance. The town did amend its bylaw in accordance with the procedures set forth in Chapter 40, yes, Your Honor. And that did receive approval from the Attorney General's Office, or at least tacitly. But the approval from the Attorney General's Office is kind of irrelevant, isn't it, for the state immunity issue? Well, I would just submit that if the Attorney General's Office elected to question or strike down the bylaws amended, it might be indicative of an improper purpose. But are you alleging that the Attorney General can convey Parker immunity? I'm not. So let's put that to one side on the immunity issue. You've got to argue that by giving your client the right to issue licenses, the legislature implicitly conveyed to your client the right to put a cap on the licenses? Your Honor, I'm arguing that the breadth of the delegation from the legislature in Chapter 266, which was to enact bylaws. I don't know what you mean by the breadth. I know what the statute says. It says license. It doesn't use the word breadth. Yes, Your Honor, I understand that. My argument is that the delegation, and this is in accordance with First Circuit case law, was broad when I say breadth. Well, I say it was narrow. Tell me how it was not broad rather than narrow. That adjective doesn't help much. I think what you need to focus on is the word license, and how do we find in that, whether you call it narrow or broad or whatever, how do you find in that a conveyance of an implicit ability to impose a cap? So in Chapter 266, the legislature granted the town of Nantucket the authority to enact bylaws, require the annual licensing, and, as Your Honor noted, to collect a fee for that. The very, I think, boiling down and dispelling the word license permits someone to do something that they would otherwise not be required to do or not be allowed to do under the law. But, counsel, you can have a system where people have to be licensed, but the number of licenses is unlimited. And so I think what Judge Kayette is asking is, and what I'm asking is, just because something allows you to have a licensing system in place, I don't understand how that tacitly says you can, therefore, limit the number. There's lots of licensing regimes that don't limit the number of licenses at all. So why is what you're arguing followed just purely from the fact that Nantucket could issue licenses? Certainly, Your Honor. I believe the legislature could infer that suppression would arise from a delegation to the municipality to adopt a licensing scheme on an island that has limited roads and that has really not changed in terms of infrastructure for many years and could infer that that would be the foreseeable result of that delegation. So is that a way of saying that the power to limit is implicit in the power to license? I am sorry, Judge, I did not catch that. Are you saying that the power to limit the number of vehicles is implicit in the power to license? I believe that the legislature could infer that in establishing a licensing scheme, the town might establish certain parameters that would have the effect of limiting competition in some manner. But the legislature has approved licensing schemes for a whole variety of activities and professions, and I don't know of any of them that have ever been construed as containing the kind of inherent or unspoken cap of politics. Do you know of any other instance where the legislature has approved a licensing scheme for a city or town and that has been construed as giving the city or town the power to limit? Your Honor, I am not aware of any case that I can direct you to at this point. I understand, Your Honor. Even assuming, however, this Court finds that the District Court erred or abuses discretion on the Dormant Commerce Clause analysis, or even the, I apologize, on the Sherman Act analysis and state action immunity or the Dormant Commerce Clause, Your Honor, I would submit that the Court, though it didn't have to after finding that plaintiffs failed to establish a likelihood of success on the merits of any of their claims, fully went through the four-pronged preliminary injunction factor and concluded that plaintiffs had not established irreparable harm. So even assuming plaintiffs can establish a substantial likelihood of success on their Sherman Act claim or their Dormant Commerce Clause claim, Your Honor, I would say that on this record it's of no help because the Court did not abuse discretion. But that would be an available avenue for you if the District Court said, I'm granting the preliminary injunction and I'm doing so because the lack of irreparable harm is so apparent and by itself is enough to query whether that would be sustainable. But we don't have that here. I thought the District Court did sort of a four-pronged classic analysis of whether an injunction and the likelihood of success, it relied on the immunity finding. And if we were to hold that there was no immunity, don't we need to have the District Court then recalibrate or re-opine as to whether an injunction should be granted? I don't believe so, Your Honor, because even if, let's say this Court overturns or questions the District Court's finding of immunity and understanding that damages are not recoverable as against municipalities under that claim, plaintiffs still have seven additional claims, six of which damages are recoverable under, and therefore their harms can be rectified by the award of money damages should they prevail on their claims ultimately. But this is an argument that the District Court hasn't addressed. Your Honor, the District Court, you are correct, went through the entire classic four-part preliminary injunction analysis. Upon finding a lack of substantial likelihood of success on plaintiff's claims, the District Court was not required to but did analyze irreparable harm. So I believe it's an alternative finding that this Court can rely upon even if this Court were to find that the Sherman Act state action immunity does not apply. Let me ask you a practical question. There are, what, hundreds of rental cars on the island that are licensed. As I understand it, the town hasn't given out every license under its own ordinance. It's still got a few it could give out. We are hearing the U.S. Court of Appeals over whether two cars get a license to add instead of 600, 602. Your Honor. Did this case go to our camp conferee? It did not, Your Honor. And was that because the parties opposed it? I don't believe it was raised, Your Honor, from what I know of the record, Your Honor. In terms of Your Honor's question as to the issuance of two licenses, Chapter 58, the Select Board voted to try to amend Chapter 58, which is set forth in our records. That was ultimately voted down at town meeting and referred for further consideration. My understanding is the Select Board is going to re-raise that at the Springtown meeting of 2025. Was it voted down? Can you just explain? I thought it was just referred for study. I apologize, Your Honor. So it hasn't actually been voted on, correct? Correct. It was referred for further study. Correct, Your Honor. And again, when determining the constitutionality of a statute, the Supreme Court has held that it's not the court's place to determine whether the statute is wise. And I'm not before you saying that it is a perfect system by any means, Your Honor. What I am saying is that it is not unconstitutional under the Dormant Commerce Clause and that it is not a violation of the Sherman Act. And I believe the Court's subsidiary findings with respect to the lack of a reputable harm adequately means this case should be affirmed. If the Court has no further questions, I'll rest my brief. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record? He has a three-minute rebuttal. Yes, Your Honors. Attorney Lucas Newbell on behalf of the Plaintiffs' Appellants. I'm just going to address my brother's argument that a general broad grant of authority is sufficient to imply anti-competitive assent by the legislature. I'm going to quote our Supreme Court in P.B. Putney. But we rejected the proposition that the general grant of power to enact ordinances necessarily implies state authorization to enact specific anti-competitive ordinances because such an approach would wholly eviscerate the concepts of clear articulation and affirmative expression that our precedents require and have required for decades. So P.B. Putney put to bed any sort of idea that a broad grant of authority is a grant of authority to do  You see the point that's being made? The point, as I understand it, is okay, let's assume there's no immunity at all. That takes us back to my question I asked you before, is where is the antitrust violation? If you want a plenary injunction, you need to show you've got a reasonable probability of prevailing on one of your claims. Right. It's the same antitrust violation that there was in P.B. Putney that there was in Boulder, right? A municipality cannot enact a law that protects the rights of its citizens. That insulates from competition, that reduces competition. Antitrust law turns on... Most of the cities in this country limit the number of cab battalions, don't they? Certainly many do. And you would say those are all violations of the Sherman Act? Well, maybe they're all immune. I haven't seen a Sherman Act case brought against that, so there must be something else. Also, those are large cities with tens of thousands of medallions that are openly exchanged. And anybody can acquire them as part of an auction. Whereas here, the same five local people have been holding on to their same licenses for at least nine years. That's the testimony we have from the administrative assistant from the town. So as far as she knows, it could be longer, right? I have an economist who says this is bad for competition. This raises the prices. This reduces service. I think Sherman Act claims turn on economic models, and I think we have it here. Counsel, can you respond to why this case wasn't referred to CAMP? Do you have any information about that? I do not, Your Honor. Judge Rickelman, it may not fit our guidelines at CAMP. It's constitutional. It's a preliminary injunction. Thank you. On the other hand, there is nothing to prevent us from taking the case under advisement, referring it to CAMP, and withholding any decision until we have a resolution report from the CAMP mediator. Would you be opposed to CAMP? Are you familiar with the CAMP program? I assume it's some kind of mediation program. I think the problem is that I'm not. Well, no, they could issue a license and then issue the medallions that they're holding onto, so they could settle. It wouldn't require them to go against any politically enacted bylaws. If settlement is potential and real, then we're all for keeping this family's business alive. Thank you, counsel.